UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIAZ ET AL., Petitioners, v. HERNANDEZ ET AL., Respondents. | CASE NO. 2:26-cv-02655-JNW<br><br>ORDER GRANTING HABEAS PETITION |

## 1. INTRODUCTION

Petitioners Marcela Ponce Diaz, Gabriel Jesus Manzini Jimenez, Yacer Amir Roca Gonzalez, Henri Vladimir Amaya Cruz, and Yacel Gonzalez Gomez are currently in immigration detention at the Northwest ICE Processing Center ("NWIRP"). Between 2015 and 2024, each Petitioner came to the United States, was detained, and was then released to live and work in the United States. Petitioners Diaz and Roca Gonzalez were released on humanitarian parole. Dkt. Nos. 3-1; 5. Petitioners Manzini Jimenez and Gonzalez Gomez were released on Orders of Release on Recognizance ("ORECs"). Dkt. Nos. 4-1; 7-1. And Petitioner Amaya Cruz

was released on bond. Dkt. No. 6. Years later, ICE re-detained each Petitioner without notice or an opportunity to be heard. Dkt. No. 11 at 8.

Petitioners filed this joint habeas petition, arguing that revoking their release and re-detaining them without notice or a hearing violates due process. Dkt. Nos. 1; 9 (Amended Prayer for Relief). The Court agrees and GRANTS the petition for the reasons below.

## 2. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. §§ 2254). A district court's habeas jurisdiction extends to challenges to immigration

related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

## 3. DISCUSSION

### 3.1 Petitioners' re-detention without notice and a pre-deprivation hearing violates procedural due process.

This Court has already clarified "that the Due Process Clause applies to Petitioners—who were deprived of their liberty when ICE revoked their release and re-detained them—regardless of whether they are subject to detention under Section 1225(b)(1), Section 1225(b)(2), or Section 1226(a)." *Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *8 (W.D. Wash. Mar. 11, 2026) (collecting cases). To determine what process the Government must provide before depriving a person of a constitutionally protected interest, courts apply the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). They weigh: (1) the private interest at stake; (2) the risk of erroneous deprivation through existing procedures and "the probable value, if any, of additional or substitute procedural safeguards"; and (3) the Government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

#### 3.1.1 Petitioners Manzini Jimenez and Gonzalez Gomez.

The Government revoked Manzini Jimenez's and Gonzalez Gomez's ORECs and re-detained them without notice or a hearing. For nearly a year, courts in this District have applied *Mathews* and found again and again that due process requires the Government to give meaningful notice and a pre-deprivation hearing before

revoking a noncitizen's release and returning them to custody.[1] The Court sees no reason to treat these two cases differently.

Considering the first *Mathews* factor, they each have a strong liberty interest in not being detained. As the great weight of authority in this District and around the country have found, an individual's "interest in not being detained is 'the most elemental of liberty interests.'" *Osuna Benitez v. Hermosillo*, No. 2:25-CV-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects.").

---

[1] *See e.g., Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025); *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1234 (W.D. Wash. 2025); *Garcia Radillo v. Scott*, No. 2:26-cv-02357-JHC, 2026 WL 2168044, at *4 (W.D. Wash. July 28, 2026); *Pablo v. ICE Field Off. Dir.*, No. 2:26-cv-01197-JHC, 2026 WL 2098018, at *5–6 (W.D. Wash. July 21, 2026); *Victoriano v. Mullin*, No. 2:26-cv- 00886-RAJ, 2026 WL 1194596, at *8 (W.D. Wash. May 1, 2026); *Soto v. Bondi*, 2:26-cv-00652-BAT, 2026 WL 972731, at *7 (W.D. Wash. Apr. 10, 2026); *Medero v. Hermosillo*, No. C26-0568JLR, 2026 WL 891355, at *3 (W.D. Wash. Apr. 1, 2026); *Gomez Candelo v. Noem*, No. 2:26-cv-00576-JNW, 2026 WL 879049, at *3–*4 (W.D. Wash. Mar. 31, 2026); *Bravo-Zambrano v. Bondi*, No. C26-0167JLR, 2026 WL 879245, at *5 (W.D. Wash. Mar. 31, 2026); *Sing Uppal v. Noem*, No. 2:26-cv-00711-RAJ, 2026 WL 864682, at *3 (W.D. Wash. Mar. 30, 2026); *Husen v. Noem*, No. 2:26-cv-00498-JHC, 2026 WL 632365, at *5 (W.D. Wash. Mar. 6, 2026); *Arrega Morales De Putul v. Hermosillo*, No. 2:26-cv-00129-GJL, 2026 WL 468637, at *2 n.1 (W.D. Wash. Feb. 19, 2026) (collecting cases); *Teweldemedhin v. Noem*, No. C25-2363JLR, 2026 WL 172029, at *4–5 (W.D. Wash. Jan. 22, 2026); *Todd v. Bondi*, No. 25-cv-02519-JHC, 2026 WL 145725, at *6 (W.D. Wash Jan 20, 2026); *Manuel v. Hermosillo*, C25-2353-TL-MLP, 2025 WL 3690778, at *2–*4 (W.D. Wash. Dec. 10, 2025); *Rodriguez v. Bondi*, C25-2167RSM, 2025 WL 3466925, at *2 (W.D. Wash. Dec. 3, 2025); *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *4 (W.D. Wash. Nov. 25, 2025) (collecting cases); *Dejesus v. Bostock*, No. 25-cv-01427-JHC-TLF, 2025 WL 3268002, at *4 (W.D. Wash. Nov. 24, 2025).

The second *Mathews* factor—the risk of erroneous deprivation–runs strongly in Petitioners' favor because the Court has almost nothing to review. Indeed, the Government submitted *no records* with its return in this matter. Instead of documents, the Government filed the declaration of ICE Deportation Officer ("DO") Kurtis Reed, which claims to summarize the relevant facts.[2] Dkt. No. 13-1. But DO Reed's account rests on his review of "various records and systems maintained by ICE in the regular course of business," not on personal knowledge of the facts underlying Petitioners' immigration cases or re-detention. *Id.* ¶ 2. Those underlying records are not before the Court, and without supporting evidence, the Court has no way to verify his hearsay statements.

Manzini Jimenez's case shows the problem. DO Reed says that police officers pulled him over, then contacted ICE because they had "difficulty communicating with and identifying" him. Dkt. No. 13-1 ¶ 20. When ICE officers arrived, they determined that Manzini Jimenez had ATD (Alternatives to Detention) program violations and traffic violations. *Id.* ¶ 20. The Government claims that "[b]ased on this information, the determination was made to revoke his OREC." *Id.* It does not specify who made that decision, nor does it provide any documentation related to Manzini Jimenez's OREC, or the alleged ATD and traffic violations.

Manzini Jimenez tells a different story. He says that ICE officers ordered him out of his car, and with their hands on their pistols, said they had a warrant for his

[2] The Government initially filed an irrelevant declaration in error, Dkt. No. 12. It subsequently filed Reed's declaration. Dkt. No. 13-1. Petitioners do not object to the late filing of the correct declaration. Dkt. No. 14 at 3 n.1.

arrest. Dkt. No. 4 ¶ 19. Manzini Jimenez says they then "took [him] to the ICE office and tried to get [him] to sign something that said 'voluntary exit' but [he] did not sign it." *Id.* ¶ 20. He states that the agents did not give a reason for his detention, *id.* ¶ 22, and he "strongly asserts that he has never violated the ATD program," Dkt. No. 1 ¶ 35. Petitioner Gonzalez Gomez likewise disputes the facts behind the reasons given for his re-detention. Dkt. No. 7 ¶¶ 11–16.

As this Court and others in this District have said many times, factual disputes like these "should be resolved at a pre-deprivation hearing, rather than resolved after the fact by th[e] [c]ourts." *Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *5 (W.D. Wash. Nov. 25, 2025); *see also Ortiz v. Hermosillo*, 2:26-CV-00384-TL, 2026 WL 607672 (W.D. Wash. Mar. 4, 2026) (finding that a pre-deprivation hearing was required under the Due Process Clause even when petitioner had a pending assault charge).

Finally, considering the third *Mathews* factor, the Court finds that the Government's interests in Petitioners' re-detention without a hearing is minimal, as it has previously concluded. *Espinoza Palacios*, 2026 WL 686138, at *8 (citing *Ledesma Gonzalez*, 808 F. Supp. 3d at 1203).

Weighing the *Mathews* factors, the Court finds that Manzini Jimenez and Gonzalez Gomez have a protected liberty interest in their continued release, and that due process required notice and a hearing before an immigration judge before they could be re-detained. Accordingly, the Court finds that they are in custody in violation of the Constitution of the United States. They must be released and not re-detained without notice and a hearing before an immigration judge.

**3.1.2 Petitioner Amaya Cruz.**

The *Mathews* factors point the same way for Amaya Cruz. He turned himself in to Border Patrol, presumably to seek asylum, in November 2015 and passed a credible fear interview, which vacated his expedited removal order. Dkt. No. 6 ¶¶ 8, 11. Four months later, he posted bond and was released from detention pending his immigration proceedings. *Id.* ¶¶ 10–11. Thus, under the first *Mathews* factor, he has the same fundamental, protected liberty interest as Manzini Jimenez and Gonzalez Gomez.

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a pre-deprivation hearing is again high. Like the other Petitioners, Amaya Cruz challenges the basis for his re-detention. The Government asserts that Amaya Cruz's release was revoked because he committed a crime. Dkt. No. 11 at 13–14. He does not dispute that he was convicted of a DUI and Assault 4 in November 2024, Dkt. No. 6 ¶ 19, but he says that he "completed all of [his] alcohol assessment and treatment requirements which were part of [his] sentence within a month," then continued living his life. *Id.* ICE did not detain him until February 2026, more than a year later, and the officers who arrested him told him it was because he "was no longer legal"—not because of his prior conviction. *Id.* ¶ 20.

The Government argues that revoking the release of someone who has been convicted of a crime carries little risk of error. Perhaps that is true in some cases. But here again, the Government produced no document showing why Amaya Cruz's bond was terminated, or establishing that it was terminated consistent with ICE's own regulations and procedures. *See e.g.*, 8 C.F.R. § 1236.1(c)(9) (regulation stating

which officers have authority to revoke bond); *Ledesma Gonzalez*, 808 F. Supp. 3d at 1201 (citing *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. August 21, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful and petitioner's release must be ordered.")). Nor was there any opportunity for Amaya Cruz to raise these issues before he lost his liberty. Accordingly, the second *Mathews* factor supports finding a due process violation here, where there was no notice or pre-deprivation hearing.

Finally, considering the third *Mathews* factor, the Court again finds that the Government's interests in Petitioners' re-detention without a hearing is minimal for the same reasons stated above. Thus, applying the *Mathews* factors, the Court finds that Amaya Cruz has a protected liberty interest in his continuing release, and that due process required notice and a hearing before an immigration judge before he could be re-detained. He too is in custody in violation of the Constitution of the United States. He must be released and not re-detained without notice and a hearing before an immigration judge.

#### 3.1.3 Petitioners Ponce Diaz and Roca Gonzalez.

The Government contends that due process required less to re-detain Ponce Diaz and Roca Gonzalez because they were released from mandatory detention under 8 U.S.C. § 1225(b) on humanitarian parole, *see* 8 U.S.C. § 1182(d)(5)(A),

which has since expired.[3] Under DHS regulations, parole terminates automatically "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1)(ii). Because their parole expired, the Government asserts that these Petitioners must be returned to the custody from which they were paroled—mandatory custody under 8 U.S.C. § 1225(b). *See* Dkt. No. 11 at 11 (citing 8 U.S.C. § 1225(b)). Most of the Courts in this District, including this one, have rejected that argument.[4] The Court does so again, adopting the same reasoning it articulated previously. *See Espinoza Palacios*, 2026 WL 686138, at *8–*9.

Turning to the *Mathews* factors, Petitioners have the same liberty interest in their continued freedom from confinement as the other Petitioners. *See id*. And given the complete lack of procedures afforded to Petitioners to challenge their re-detention, the risk of erroneous deprivation is high. Indeed, while the Government argues that they were re-detained because their parole expired, the record contradicts that assertion. The record shows that the Government re-detained

---

[3] Ponce Diaz's parole expired on January 17, 2019, Dkt. No. 3-1 at 7, and Roca Gonzalez's parole expired on November 30, 2022, Dkt. No. 5-1 at 6.

[4] *See e.g., Morales v. Hernandez*, No. 2:26-cv-01686-DGE, 2026 WL 1753643, at *4 (W.D. Wash. June 18, 2026) ("[W]here a noncitizen is allowed to remain at liberty even after parole has expired by its own terms, the noncitizen's liberty interest remains."); *Espinoza Palacios*, 2026 WL 686138, at *8–*9 (quoting *Ramirez Tesara*, 800 F. Supp. 3d at 1136–37 ("That the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide an individualized hearing prior to re-detaining the parolee.")); *Shinwari v. Hermosillo*, No. 2:26-cv-00009-RAJ, 2026 WL 262605, at *4 (W.D. Wash. Jan. 30, 2026) (rejecting Government's argument that petitioners' liberty interest was diminished because they "had notice that their parole was only for a defined, brief period of time and could be revoked at any time.").

Ponce Diaz due to a misdemeanor arrest—not because her parole expired. *See* Dkt. No. 3-1 at 4.

As for Roca Gonzalez, the Government produced no documents to review to determine the reason for his re-detention. It has only DO Reed's declaration, which states: "On June 23, 2026, ERO Officers in Portland, Oregon identified Petitioner Roca Gonzalez as amenable to removal from the United States due to lack of legal status." Dkt. No. 13-1 ¶ 29. Finally, as explained above, the Government's interests in Petitioners' re-detention without a hearing is low. Thus, applying the *Mathews* factors, the Court finds that Ponce Diaz and Roca Gonzalez have a protected liberty interest in their continued release, and that due process required notice and a hearing before an immigration judge before they could be re-detained. Accordingly, the Court finds that they are in custody in violation of the Constitution of the United States. They must be released and not re-detained without notice and a hearing before an immigration judge.

**3.2 Release, not a later hearing, is the remedy.**

In the alternative, the Government asks the Court to order a bond hearing rather than release. Dkt. No. 11 at 10, 14. It relies on *Reyes v. Hermosillo*, which ordered a prompt post-deprivation hearing instead of release for a petitioner arrested and charged with a crime after her release. No. 2:26-CV-00270-TLF, 2026 WL 507678, at *5 (W.D. Wash. Feb. 24, 2026). Gonzalez Gomez's arrests and Manzini Jimenez's alleged OREC violations, the Government says, are the same sort of material change.

The Court declines. A hearing held after the fact cannot undo a deprivation that has already happened; it "cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). And Petitioners have been detained for months, so no hearing now would be prompt. *Reyes* is also different on its facts. The petitioner there still faced pending charges when the court ruled. Here, Ponce Diaz's charge was dismissed, Dkt. No. 3 ¶ 21, and Gonzalez Gomez's 2024 charge was dismissed with prejudice on his completion of a diversion agreement, six weeks before ICE revoked his OREC, Dkt. No. 7-1 at 11. His one remaining charge is an accusation he has denied, and an accusation is not a conviction. Dkt. No. 7 ¶¶ 10, 15. Amaya Cruz's convictions date to November 2024, and ICE left him at liberty for more than a year afterward. Manzini Jimenez has no criminal history at all, and the violations the Government asserts are the very facts he disputes and has never been allowed to contest. A later hearing is no answer to a deprivation that should not have occurred without one.

### 3.3 The requested injunctive relief is warranted.

Beyond release from detention, Petitioners ask the Court to permanently enjoin their re-detention "absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [they are each] a flight risk or danger to the community and that no alternative to detention would mitigate those risks." Dkt. No. 9 at 2. In *Espinoza Palacios*, the Court found this relief appropriate under materially similar circumstances. 2026 WL 686138, at *10–11. The Court adopts the same reasoning and incorporates it here.

## 4. CONCLUSION

Accordingly, the Court ORDERS:

1. The Petition for Writ of Habeas Corpus is GRANTED.
2. Respondents SHALL release Petitioners Marcela Ponce Diaz, Gabriel Jesus Manzini Jimenez, Yacer Amir Roca Gonzalez, Henri Vladimir Amaya Cruz, and Yacel Gonzalez Gomez from detention within TWENTY-FOUR (24) hours of this order, subject to the conditions of their most recent release. If there is no evidence of Petitioners' previous conditions of release, then Petitioners shall be released on reasonable conditions.
3. Respondents are permanently enjoined from re-detaining Petitioners during the pendency of their removal proceedings absent written notice and a hearing before re-detention where Respondents must prove by clear and convincing evidence that each Petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks.
4. Within FORTY-EIGHT (48) hours of this Order, Respondents MUST provide the Court with a declaration confirming that Petitioners have been released from custody and informing the Court of the dates and times of their releases.
5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. If Petitioners submit an EAJA fee petition, they should also submit a separate brief, not to

exceed five pages, showing cause why hearing on the petition should not be stayed pending the United States Supreme Court decision in *Montoya Palacios v. Baker*, No. 25-4045, 2026 WL 171690 (D. Md. Jan. 22, 2026), *aff'd*, No. 26-6251, 2026 WL 1154321 (4th Cir. Mar. 24, 2026), *cert. granted sub nom. Palacios v. Liggins*, No. 25-1223, ___ S. Ct. ___, 2026 WL 1855057 (June 29, 2026).

6. The Court retains jurisdiction to enforce its Orders in this matter.

Dated this 24th day of August, 2026.

Jamal N. Whitehead
United States District Judge